333 So.2d 97 (1976)
Michael M. BENNETT, President of St. Petersburg Junior College, Appellant,
v.
Marcia D. WARDEN, Appellee.
No. 75-984.
District Court of Appeal of Florida, Second District.
June 4, 1976.
Rehearing Denied June 29, 1976.
*98 Allen M. Blake of Alley, Alley & Blue, Tampa, and Edward A. Turville of McClure & Turville, St. Petersburg, for appellant.
Larry G. Turner of Goldin & Turner, Gainesville, for appellee.
Kenneth L. Ryskamp and Arthur M. Simon of Bolles, Goodwin, Ryskamp & Welcher, Miami, for amicus curiae, Miami-Dade Community College.
McNULTY, Chief Judge.
Florida's Sunshine Law[1] provides that all meetings of any "board" or "commission" of any "agency" or "authority" of any county, city or political subdivision shall be open, public meetings. Appellant Bennett, as President of St. Petersburg Junior College, periodically met in private with a group of junior college employees, called the Career Employees Council (hereinafter CEC), who were designated by Bennett as representatives of the career employees of St. Petersburg Junior College for the purpose of discussing with him various problems and suggestions relating to employees' working conditions in general and wages and hours in particular.
Plaintiff/appellee Warden, a labor organizer for the Communication Workers of America, was allegedly frustrated by the aforesaid closed meetings in her efforts to organize the junior college employees on behalf of her union. As the union organizer, and as a citizen of the State of Florida, she instituted this action seeking to enjoin the aforesaid meetings between appellant Bennett and the CEC contending that both Bennett and the CEC were "boards" or "commissions" within the contemplation of the Sunshine Law. She prevailed below and an injunction issued. We reverse.
The thrust of appellee's argument is that appellant Bennett is the designee of the Junior College Board of Trustees, the governing body of the college, to act in the Board's stead and as its alter ego in negotiating working conditions for career employees of the college. Additionally, or at least alternatively, she contends that the CEC is also an alter ego of the Board since, though appointed by appellant Bennett, it has been impliedly ratified and approved by the Board because of the Board's knowledge *99 of its existence and acquiescence in its liaison with Bennett. She relies essentially on the case of Town of Palm Beach v. Gradison[2] as authority for her conclusions, but we think her reliance is misplaced.
In that case, the town council passed a resolution creating a citizen planning committee to meet with and advise a planning firm which was engaged to update and revise the town's zoning ordinances. None of the citizens' committee was a landscape or civil engineer or other expert zoning planner who would, in his expert capacity, give testimony or advice relating to desirable land use control. Rather, as the supreme court determined,[3]
"[T]hey were a buffer lay group of citizens to serve part-time as the alter egos of the Town Councilmen to make tentative decisions guiding the zoning planners and advising the Council as to their ultimate zoning ordinances. In other words, the Council delegated to the committee much of their administrative and legislative decisional zoning formulation authority which is ordinarily exercised by a city-governing body itself  and particularly the position of the process where the affected citizens expect to be officially heard. Thus, the nature of the committee and its function reached the status of a board or commission that to act legally must comply with the sunshine law."
Moreover, in that case, the Town Council expressly ordained the committee as an "element" of the zoning commission (though pro-forma reserving the right to override the committee's recommendations) and through the president of the Town Council and/or various members of the zoning commission met frequently in executive session with the town manager, their liaison with the committee, to participate in the formulation of the final comprehensive zoning plan which, in essentially the same form as produced by the committee and the zoning consultants, was ultimately approved by the Town Council. Clearly, we would agree, the citizens' planning committee was an arm or alter ego of the Town Council over whom the Council maintained constant vigilant dominion and control. As stated by the Court:[4]
"The citizens' planning committee was not an organization formed by any civic group such as a taxpayer's league, better government league, civic association, etc. It was conceived and formed by the Town Council for the purpose of working with the planning consultant so that the plan produced would be consistent with the land-use controls intended by the citizens. The citizens' planning committee was an arm of the Town Council."
The operative facts here, however, are inapposite. To begin with, with respect to appellant Bennett, he is merely the executive officer of the Board of Trustees and, in this respect, is no different than any other executive officer of any other board, agency or commission of government. By definition and capacity, then, he is clearly outside the ambit of the Sunshine Law; he is neither a "board" nor a "commission." The mere fact that he may carry out the directions, orders and policies of the "board" in the day-to-day administration of the junior college does not make him an "alter ego" of the Board; and in the performance of those duties we are of the view that, as suggested by Town of Palm Beach, supra, frequent and unpublicized meetings between an executive officer and advisors, consultants, staff or personnel under his direction, for the purpose of "fact-finding" to assist him in the execution of those duties, are not meetings within the contemplation of the Sunshine Law. Any other conclusion, carried to its *100 logical extension, would in our view unduly hamper the efficient operation of modern government the administration of which is more and more being placed in the hands of professional administrators. It would be unrealistic, indeed intolerable, to require of such professionals that every meeting, every contact, and every discussion with anyone from whom they would seek counsel or consultation to assist in acquiring the necessary information, data or intelligence needed to advise or guide the authority by whom they are employed, be a public meeting within the disciplines of the Sunshine Law. Neither the letter nor the spirit of the law require it.
Concerning the CEC, the facts are that the members thereof are appointed by and serve at the pleasure of the appellant, President Bennett; that there is no evidence beyond the naked knowledge of its existence and function that the Board of Trustees has reserved or exerted any control of any nature, kind or description over the CEC; that the matters discussed between the President and the CEC are not policy matters but, rather, constituted fact-finding expeditions by the President as executive officer of the Board; that, even so, the President's recommendations resulting therefrom are first made to an Administrative Council, comprised of supervisory and executive administrative officials under the President (whose meetings are open to the public and in the Sunshine since such council admittedly exercises decision-making functions amounting to the formulation of policy or to governmental decisions); and that, finally, the recommendations of the Administrative Council are submitted to the Board of Trustees for ultimate ratification or rejection. In short, we are of the view that the CEC is far too remote in the decision-making process relating to working conditions of career employees of St. Petersburg Junior College to be capable of making or formulating policy or crystalizing decisions anywhere near that point, "... just short of ceremonial acceptance . ."[5] by the Board, which the supreme court in Town of Palm Beach, supra, recognized as a measure of capacity which compels the conclusion that a "council," "committee" or "group" is an alter ego of a "board or commission" bound by the Sunshine Law. We think, therefore, and so hold, that the CEC herein is not governed by the sanctions of that law.
We have reviewed the remaining arguments of appellant with respect to claimed exemptions under the Public Employees' Relations Act[6] and find them to be without merit. The factual framework herein makes the provisions thereof inapplicable.
The judgment appealed from should be, and it is hereby reversed; and the cause is remanded with directions that the injunction issued herein be vacated and set aside and that appellee's complaint be dismissed with prejudice.
GRIMES and SCHEB, JJ., concur.
NOTES
[1] Section 286.011, F.S. 1973.
[2] (Fla. 1974), 296 So.2d 473.
[3] Id. at p. 474.
[4] Id. at p. 476.
[5] Id. at p. 477.
[6] Section 477.605, F.S. 1975.