### STATE, ex rel. STATE ATTORNEY, et al v. KRAUSE, et al.
No. 78-3020 (23).

Circuit Court, Dade County.

February 24. 1978.

Thomas Peterson, Assistant State Attorney, for Janet Reno, State Attorney.

Sharyn L. Smith, Assistant Attorney General, for Robert L. Shevin, Attorney General.

George Knox, Miami City Attorney, for the defendant Krause.

Dan Paul of Paul & Thomson, Miami, for the Miami Herald Publishing Co., intervenor.

Joseph P. Averill, Miami, for the Miami Daily News, Inc., intervenor.

DAN SATIN, Circuit Judge.

The above entitled cause came on to be heard before the undersigned judge on the complaint for declaratory and injunctive relief filed by the plaintiff, and the answer to said complaint filed by the defendants, Robert Krause, et al. The parties have stipulated and agreed that this matter may proceed to final determination based on the foregoing pleadings without observing the formality of deferring the final hearing as provided for pursuant to the Florida Rules of Civil Procedure, and all defendants are before the court.

The uncontroverted and stipulated facts are as follows —

This is an action for declaratory judgment pursuant to Chapter 86, Florida Statutes, and for a temporary and permnent injunction pursuant to Sections 286.012 and 286.011, Florida Statutes, and the Florida Rules of Civil Procedure, §1.610.

Plaintiff Janet Reno, is a citizen of the state of Florida and State Attorney of the Eleventh Judicial Circuit and brings this action in the name of the state of Florida; plaintiff Robert L. Shevin, is the Attorney General for the state of Florida.

Defendant, Robert Krause, and four other persons, were selected by the city manager of the city of Miami to meet together and jointly screen applications, conduct interviews, evaluate candidates,

and recommend four or five of the best qualified candidates, which would culminate in his appointment as chief of police for the city of Miami, and to assist the city manager in the process of making his final selection of a police chief.

The city of Miami is a political subdivision of the state of Florida.

With the exception of the defendant, Robert Krause, all of the other selected individuals are private citizens and are not staff or personnel in the employ of the city manager or of the city of Miami.

The foregoing selected individuals were requested by the city manager to meet together to jointly review the approximately 165 applications for the position of chief of police of the city of Miami; to recommend the elimination of those applicants who did not appear to be sufficiently qualified; to conduct interviews only among the approximately 15 they decided were the best qualified, and to recommend the names of four or five applicants from whom the city manager might appoint one to the position of chief of police. The travel expenses of seven or eight of the applicants to be interviewed who reside outside of Dade County will be paid from public funds of the city of Miami and the city is paying the travel expenses of Watkins to return from Tennessee for the February 25, 1978 meeting, and providing any necessary secretarial services required by the group. The city manager has advised the public that it is unlikely that he will appoint anyone as chief of police who is not among the persons who are recommended by this group. However, the city manager has additionally advised the public that based upon his powers as they are enumerated in Section 16 of the Charter of the City of Miami, and Section 43-2 of the Code of the City of Miami, he is not precluded from appointing any individual who, in his judgment, is qualified to occupy the position, notwithstanding any recommendation by the foregoing group.

On February 8, 1978 defendant Krause and the selected individuals held a meeting at Miami City Hall at which the city manager and the city of Miami turned over to them applications which were received by the city for the position of chief of police and the selected individuals began the process of evaluating the applications and narrowed the field of applicants at the February 8th meeting to approximately 15 to 18 candidates for further consideration.

The public was given no notice of this meeting nor was this meeting at any time open to the public. No minutes were kept of this meeting which were made available to the public. Demand to enter this meeting was made by a newspaper reporter, who is a citizen of the state of Florida, and such demand was denied by the city manager and the foregoing selected individuals.

Defendants intend to hold another meeting on February 25, 1978, of which no formal notice has been given and which will not be open to the public.

The question posed to this court for determination is — whether the defendants composing this advisory group, which was appointed by the city manager, Joseph Grassie, is subject to the Government in the Sunshine Law.

Application was made by the Miami Daily News, Inc. to intervene as a party plaintiff, and application was made by the Miami Herald to intervene as a party plaintiff and both applications were granted.

The court has heard and considered the evidence presented, the arguments of the parties as well as the intervenors, and has reviewed and considered the memoranda of law submitted by the parties and the intervenors.

The plaintiffs rely heavily upon Town of Palm Beach v. Gradeson, a Supreme Court of Florida case cited at 296 So. 2d 473 to support their position. The defendants direct the court's attention to Bennett v. Warden, a Second District Court of Appeal case cited at 333 So.2d 97 as the controlling case, as it pertains to the facts at issue. Unfortunately neither case is squarely on point and each case is clearly distinguishable from the case presently at issue before the court. In the Bennett case the Second District Court of Appeal found that the president of a junior college, as an executive officer of the college board of trustees, was no different from any other executive officer of any other board, agency or commission of government and, as such was neither a "board" nor a "commission" so as to require him to comply with the Sunshine Law by opening all of his meetings with the representatives of the career employees of the college; Bennett, as president of St. Petersburg Junior College, periodically met in private with a group of junior college employees, who were designated by him as representatives of the career employees of St. Petersburg Junior Collge for the purpose of discussing with him various problems and suggestions relating to employees' working conditions in general and wages and hours in particular: Bennett was merely the executive officer of the board of trustees and was neither a "board" nor a "commission' and carried out the directions. orders and policies of the "board" in the day-to-day administration of the junior college. The court went on to find that the career employees council at the junior college, members of which were appointed by and served at the pleasure of the president of the college, *was far too remote in the decision-making process relating to working conditions* of career employees of the college to be capable of making or formulating policy or

crystalizing decisions anywhere near that point and, as such, was not a "council," "committee" or "group" which was bound by the open meeting provisions of the Sunshine Law as an alter ego of the college board of trustees.

In the case presently before us the decision-making process of the group appointed by the city manager to assist him in the selection of a police chief is not "too remote" — but on the contrary has a direct influence on the decision-making authority that appointed them. In the Town of Palm Beach v. Gradeson case, supra, a group of citizens was appointed by the town council for the purpose of guiding the planning firm that was employed for the purpose of updating and revising the town zoning ordinances, in their efforts to assure that the plan produced would be consistent with the character, image and land-use controls intended by the citizens. The court found that this was a buffer lay group of citizens whose function was to serve part-time as the alter egoes of the town councilmen to make tentative decisions guiding the zoning planners and advising the council as to their ultimate zoning ordinances and as such were subject to the Government in the Sunshine Law. That case is distinguished from the present case in that the city commission of the city of Miami had no relationship whatsoever with the group that Mr. Grassie selected to assist him in appointing a chief of police. Cases involving an interpretation and application of the Florida Sunshine Law have been considered in the Second and Third District Courts of Appeal as well as by the Supreme Court of the state of Florida — however, there is no case directly on point and it would appear that an application of the Florida Sunshine Law can be determined somewhere between the *Gradeson* and *Bennett* cases.

In order to determine whether or not the defendants are governed by the Florida Sunshine Law it becomes necessary to examine the law itself and determine the intent of the legislature as it applies to the present case.

The 1967 Session of the Florida legislature enacted Chapter 67-856, Laws of Florida 1967, which became effective July 1, 1967, and appears in the Florida Statutes as Section 286.011, it has appropriately been labeled Florida's "Government in the Sunshine Law." It provides among other things that — "all meetings of any board or commission of any state agency or authority or any agency or authority of any county, municipal corporation or any political subdivision, except as otherwise provided in the constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken

or made at such meetings. The minutes of a meeting of any such board or commission of any such state agency or authority shall ·be promptly recorded and such records shall be open to public inspection. ****"

It is apparent that the legislature intended that the "open meeting" concept was intended to bind every "board or commission" of the state. It is also apparent that the legislature intended to include the acts of deliberation, discussion and deciding that occurred prior to and leading up to the affirmative formal action which renders official the final decisions of a governing body.

Chief Justice Adkins in his opinion in the *Gradeson* case stated at page 475 —

> Every meeting of any board, commission, agency or authority of a municipality should be a marketplace of ideas, so that the governmental agency may have sufficient input from the citizens who are going to be affected by the subsequent action of the municipality. The ordinary taxpayer can no longer be led blindly down the path of government, for the news media, by constantly reporting community affairs, has made the taxpayer aware of government problems. Government, more so now than ever before, should be responsive to the wishes of the public. These wishes could never be known in non-public meetings, and the governmental agencies would be deprived of the benefit of suggestions and ideas which may be advanced by the knowledgeable public. Also, such open meetings instill confidence in government. The taxpayer deserves an opportunity to express his views and have them considered in the decision-making process. ***** No governmental board is infallible and it is foolish to assume that those who are elected or appointed to office have any superior knowledge concerning any government problem. *Every person* charged with the administration of any governmental activity must rely upon suggestions and ideas advanced by other knowledgeable and interested persons. As more people participate in governmental activities, the decision-making process will be improved. **** The statute should be construed so as to frustrate all evasive devices. This can be accomplished only by embracing the collective inquiry and discussion stages within the terms of the statute, as long as such inquiry and discussion is conducted by any committee or other authority appointed and established by a governmental agency and relates to any matter on which foreseeable action will be taken. *(Italics added.)*

In the instant case the city manager, who is the chief administrative officer of the city of Miami appointed by the city commission is charged with the responsibility of selecting a chief of police for the city of Miami — a matter obviously of great import and interest to the public. Mr. Grassie has apparently recognized the

wisdom of seeking advice and assistance from a group of citizens appointed by him for the purpose of conducting the screening process and making its recommendations to him for his ultimate and final decision. Mr. Grassie is to be commended for having exercised the good judgment of availing himself of as much input and assistance in connection with this important selection. Having elected to create this group, which by any other name is nonetheless a "board" and empowering them with the responsibility of screening the applicants for the important post of police chief and exercising an elimination process to the point of reducing the number of applicants to four or five which they would then recommend to the city manager and which would constitute an official act on their part, brings them, in the judgment of this court, clearly within the provisions of Section 286.011 of the Florida Statutes.

While it may be contended, though it has not been raised in the pleadings presently before the court, that such public scrutiny may discourage competent and capable applicants from seeking this position, such a risk is outweighed by the advantages of the public being informed by the right to participate as to the background, qualifications, character and all other attributes that may be considered by the group in making its assessment of the applicants for this important position. The public at large is and should be vitally interested in the selection of a police chief for the city of Miami and an evaluation, interview and screening of these applicants for this position should be conducted "in the sunshine."

It is accordingly considered, ordered and adjudged as follows —

1. The defendants Gerald Watkins, Johnny Jones, Jeanne Bellamy, Leslie Pantin and Robert Krause are permanently enjoined and restrained from holding, conducting or participating in any meeting wherein public business is discussed or contemplated or transacted or at which official acts are to be taken unless such meetings are at all times open to the public and properly noticed in advance and the minutes of such meetings are recorded and promptly opened to public inspection. Such public business and official acts shall extend to and include, but not be limited to the screening of applications, conducting interviews, evaluating candidates, and recommendations thereof for the position of chief of police for the city of Miami.

2. Each of the defendants, Gerald Watkins, Johnny Jones, Jeanne Bellamy, Leslie Pantin and Robert Krause are directed, within ten days from the date of this order to prepare a résumé of the proceedings reflecting those matters acted upon at the meeting of February 8, 1978 which minutes shall be promptly made available for public inspection.

3. The prayer of the plaintiffs that a declaratory decree declaring that any duly appointed board or committee of the city of Miami which takes official acts or is a step in any official decision-making process is subject to Sections 286.011 and 268.012 of the Florida Statutes is denied. Until such time as we have the benefit of further appellate review or legislative modification, each situation which has not previously been resolved by prior judicial decision will have to be reviewed on its merit, however, if there is any doubt as to whether such board or committee is governed by Section 286.011 of the Florida Statutes, the members of any such board, agency, authority or commission should follow the open-meeting policy of this state.

4. The defendants and any replacements or substitutions appointed in addition to or in substitution of any or either of them are subject to the Government in the Sunshine Law and subject to Sections 286.011 and 286.012 of the Florida Statutes.

5. Jurisdiction of this cause and of the parties hereto is reserved for the purpose of enforcing this order.