442 So.2d 934 (1983)
Terri WOOD, As Editor of the Verdict, Thomas R. Julin, and Campus Communications, Inc., Petitioners,
v.
Robert Q. MARSTON and Fletcher Baldwin, Respondents.
No. 63341.
Supreme Court of Florida.
December 1, 1983.
*936 Thomas R. Julin of Steel, Hector & Davis, Miami, Terri Wood, Marathon Shores, Sandra Bieber-Allen, and Larry G. Turner, Gainesville, for petitioners.
Chesterfield Smith, Julian Clarkson, Michael Fogarty, and Gregg Thomas of Holland & Knight, Tampa, for respondents.
Jim Smith, Atty. Gen., Joslyn Wilson and John J. Rimes, III, Asst. Attys. Gen., Tallahassee, amicus curiae for State of Fla., Dept. of Legal Affairs.
Joseph W. Little, Gainesville, amicus curiae for Joseph W. Little and Winston P. Nagan, faculty members of the University of Florida College of Law.
Steven Carta of Smith, Carta & Ringsmuth, Fort Myers, amicus curiae for News-Press Pub. Co., Inc., Cape Publications, Inc., The Tribune Co., Palm Beach News Papers, Inc., and News & Sun-Sentinel, Inc.
Parker D. Thomson, Sanford L. Bohrer, and Charles V. Senatore of Paul & Thomson, Miami, amicus curiae for The Miami Herald Pub. Co.
EHRLICH, Justice.
The decision of the First District in Marston v. Wood, 425 So.2d 582 (Fla. 1st DCA 1982), is before us on grounds of direct and express conflict with decisions of this Court and other district courts. Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974); News-Press Publishing Co. v. Carlson, 410 So.2d 546 (Fla. 2d DCA 1982); Krause v. Reno, 366 So.2d 1244 (Fla. 3d DCA 1979). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash the decision of the First District.
At issue is the applicability of Florida's Sunshine Law, section 286.011, Florida Statutes (1979), to a faculty committee which seeks out and screens applicants for a university position to which the university president must make the final appointment. When Joseph Julin announced his retirement as the dean of the University of Florida College of Law, university president Robert Q. Marston set in motion the mechanism by which a university dean is appointed. Sections 240.227(1) and (5), Florida Statutes (1979), vest in the university president authority to appoint academic deans. However, this authority is subject to a provision in the university constitution.
In making this appointment [a college dean] the President shall give consideration to the opinion of the faculty of the college concerned by consultation with a special committee of at least three faculty members elected by the faculty of the college.
Chapter IV, section 2(A)(3), Constitution of the University of Florida. (Emphasis supplied.) The president was also required to *937 consult the faculty on the appointment by the accreditation standards of the American Association of Law Schools (AALS) and the American Bar Association (ABA).[1] Nothing, however, required Marston to make the final choice from the recommended panel. Marston instructed the law school faculty to elect a search-and-screen committee. The ten-person committee consisted of seven faculty members, Chesterfield Smith, a prominent attorney and benefactor of the school, and two non-voting student members. The purpose of the committee was to solicit and screen applications for the deanship and to submit for faculty approval a list of the best qualified applicants before forwarding the list to Marston for the final selection. The committee was advised by a university vice president, Dr. Robert Bryan, in a document entitled "Openness Procedures for Search for Dean for the College of Law," to treat any discussion of the qualifications of particular candidates as privileged communication to take place only in executive session. In other words, the evaluation process was to take place "out of the sunshine."
Petitioners, representing local news media interests, filed a complaint against Marston and Professor Fletcher Baldwin, the chairman of the committee, seeking a declaratory judgment and temporary and permanent injunction prohibiting Marston and Baldwin from excluding the press or the public from meetings of the search-and-screen committee. On April 2, 1980, Circuit Judge R.A. Green, Jr., entered an order granting the requested temporary injunction upon the posting of a bond. Marston and Baldwin filed an appeal which resulted in an automatic stay of the injunction, but Green vacated the stay upon motion of the petitioners. The First District denied a motion to reinstate the stay and affirmed the temporary injunction without opinion.
On July 24, 1981, after a full evidentiary hearing at which both sides were represented and presented testimony, Circuit Judge Benjamin Tench entered final judgment permanently enjoining Marston and Baldwin from closing to the public any meetings of the search-and-screen committee during which official acts, including evaluations of candidates, would take place. Judge Tench later granted petitioners' motion for attorneys' fees and costs. Marston and Baldwin complied with the injunction in all respects and the search and screen procedures were subject to public scrutiny at all times. Nonetheless, respondents appealed the final judgment and the fee award.
The First District reversed the permanent injunction, the declaratory judgment and the cost and fee award and directed entry of a final judgment for the respondents. In reaching its decision, the First District found that the committee was shielded from the effect of the Sunshine Law[2] by two common-law exceptions to its *938 operation, the "staff exception" discussed in Occidental Chemical Co. v. Mayo, 351 So.2d 336 (Fla. 1977) and Bennett v. Warden, 333 So.2d 97 (Fla. 2d DCA 1976), and "remoteness from the decision-making process" discussed in Bennett v. Warden.
We note that the Sunshine Law was enacted in the public interest to protect the public from "closed door" politics and, as such, the law must be broadly construed to effect its remedial and protective purpose. Canney v. Board of Public Instruction, 278 So.2d 260 (Fla. 1973); Board of Public Instruction v. Doran, 224 So.2d 693 (Fla. 1969). This Court has consistently refused to permit governmental entities to carry out decision-making functions outside the law. Canney; City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971); Doran. Respondents, however, argue that the Sunshine Law was never intended to be applicable to institutions of higher learning and that the search-and-screen committee is not a board or commission within the meaning of the law, contending that the legislature explicitly identifies universities or institutions of higher learning as such when it intends to include those entities within the provisions of an act. An examination of two chapters of Florida Statutes closely related in purpose and policy to the Sunshine Law refutes this contention.
Chapter 119, The Public Records Law, provides for public access to records made "in connection with the transaction of official business by any agency." § 119.011(1), Fla. Stat. (1981). Institutions of higher education are not specifically identified in the definition of agency. § 119.011(2), Fla. Stat. (1981). Nonetheless, the legislature's clear intention that the Public Record Law apply to universities is evidenced by the existence of two narrow exceptions to that law which limit access to certain student and employee records. See §§ 228.093, 240.237, 240.253, Fla. Stat. (1981). Thus, in the Public Records Law, the coverage is expressed generally; exemptions are identified explicitly.
Similarly, Chapter 120, Florida Statutes (1981), the Administrative Procedure Act (APA), which governs the manner in which governmental agencies may take official action, contains no explicit inclusion of universities or institutions of higher learning in its definition of "agency." § 120.52(1), Fla. Stat. (1981). On the other hand "educational unit" is defined to include state universities. § 120.52(6), Fla. Stat. (1981). Significantly, the only use of the term "educational unit" in the APA occurs in expressly excluding preparation and modification of curricula by an educational unit from the definition of "rule." § 120.52(14)(c)(4), Fla. Stat. (1981). Again, the legislature has enacted a law of broad applicability to which it has made an explicit exception for one specific activity of state universities.
A similar pattern emerges in considering the application of the Sunshine Law to institutions of higher learning. The legislature has explicitly exempted search-and-screen committees evaluating applicants for the positions of Chancellor of the Board of Regents and presidents of community colleges from the requirements of section 286.011. §§ 240.209(2), 240.319(3)(n), Fla. Stat. (1981). Thus, the conclusion is inescapable that the university is a state agency not exempted from the provisions of the Sunshine Act by any legislative enactment.
The search-and-screen committee had an admitted "fact-gathering" role in the solicitation and compilation of applications. It had an equally undisputed decision-making function in screening the applicants. In deciding which of the applicants to reject from further consideration, the committee performed a policy-based, decision-making function delegated to it by the president of the university through the faculty as a whole. Nor does the fact that the results were submitted to the faculty as a whole, which had the authority to review the work of the screening committee, render *939 the committee's function any less policy-based or decision-making. The district court placed great emphasis on the fact that the faculty as a whole rejected one entire panel of candidates submitted by the committee and recommended for further consideration a candidate rejected by the committee, but we do not find this point dispositive.
The facts of this case are clearly analogous to the facts in Town of Palm Beach v. Gradison, News-Press Publishing Co. v. Carlson and Krause v. Reno. Each of those cases involved delegation of a portion of the decision-making authority to an advisory group. In Town of Palm Beach, the advisory committee was comprised of citizens who functioned as an element of the zoning commission "to make tentative decisions guiding the zoning planners and advising the [Town] Council as to their ultimate zoning ordinances." 296 So.2d at 474. In spite of the fact "that the Town Council had the authority to override any changes induced by the zoning commission and `would do so without timidity,'" id. at 475, the citizens' advisory committee was found to be performing official acts and was therefore within the scope of the Sunshine Law. Analogously, in this case, the power of the faculty as a whole to review and reject the decisions of the committee does not alter the fact that those decisions were made. Those decisions are official acts which must be made in the sunshine.
In Krause, a city manager had appointed a citizens' advisory group to screen applicants for the position of chief of police. The committee was authorized "to meet together and jointly screen applications, conduct interviews, evaluate candidates, and recommend four or five of the best candidates." 366 So.2d at 1246. The threshold question there as here was whether the advisory body itself could be controlled by the Sunshine Law. The city manager, the individual authorized in his official capacity to make the hiring decision, was not bound to select the police chief from among the candidates recommended to him. The Third District, citing Town of Palm Beach, recognized that the city manager's delegation of the elimination portion of the decision-making process to the citizens' advisory committee made that committee a board within the meaning of the Sunshine Law. Id. at 1251-52. The parallel to the instant case is clear. In instructing the faculty to elect the search-and-screen committee to perform the elimination portion of the decision-making process, Marston delegated official acts to a board within the meaning of section 286.011(1).
News-Publishing Co. v. Carlson involved a delegation of decision-making authority to an ad hoc committee comprised of staff members. The Second District, with a precise and accurate analysis of the import of Occidental Chemical and Bennett v. Warden, correctly focused on the nature of the act performed, not on the make-up of the committee or the proximity of the act to the final decision. Finding the acts to be decision-making, in spite of the review procedures prior to ratification of the decision made, and noting that the staff members were also decision-makers performing official acts, the district court properly held that the operations of that committee were open to public scrutiny.
The facts now before us illustrate a review of a decision-making process, which cannot serve to replace the public right of first-hand access to that process. Just as the faculty had a right to review and reject the committee's work, it had discretion to pass the recommendations along without further discussion or evaluation. We are not persuaded by respondents' characterization of the review process in News-Publishing as "rubber stamp" proceedings, distinguishable from the active review of committee decisions exercised by the full faculty here. Review is a second-hand retrospective reflection upon the decision-making process, not the first-hand observation to which the public is entitled. Where a body merely reviews decisions delegated to another entity, the potential for rubber-stamping always exists. To allow a review procedure to insulate *940 the decision itself from public scrutiny invites circumvention of the Sunshine Law. We reaffirm the position enunciated by Justice Adkins in Town of Palm Beach:
The statute should be construed so as to frustrate all evasive devices. This can be accomplished only by embracing the collective inquiry and discussion stages within the terms of the statute, as long as such inquiry and discussion is conducted by any committee or other authority appointed and established by a governmental agency, and relates to any matter on which foreseeable action will be taken.
296 So.2d at 477.
Neither do we read Occidental and Bennett v. Warden as enunciating exceptions to the Sunshine Law so much as delineating certain exchanges of information which are not "decision-making" in nature, and which were thus not official acts within the meaning of the Law.
In Occidental Chemical, a purchaser of electric power from Florida Power Corporation sought to challenge the Public Service Commission's ratification of a Florida Power Corporation rate increase on grounds that the decision to grant the increase was made in violation of the Sunshine Law. This Court rejected that challenge, holding, in the face of a "broad-brush argument" that commissioners' meetings with staff should all take place in the sunshine, that the staff itself was not subject to the Sunshine Law. 351 So.2d at 341. This statement, taken out of context is the source of the argument for the existence of a staff exception. However, the Court elucidates the actual reason for refusing to invalidate the PSC decision further:
Occidental argues, more narrowly, that because the agenda conference lasted only 90 minutes and resulted in adoption of the pre-prepared staff proposal, the commissioners either met in private to reach a consensus or delegated their decision-making responsibility to staff... . There is, of course, no evidence in this record that the commissioners met in secret or used staff members as intermediaries in order to circumvent public meeting requirements. The Commission suggests that it is just as reasonable on this record to assume, contrary to Occidental's assumptions, that the commissioners individually studied Florida Power's petition in light of the extensive data they personally heard developed at the hearings, that they reached independent judgments on the many issues involved in rate-making, and that in doing so they would have been privileged to call upon staff members for legal advice or for an amplification of facts.

Id. at 341-42. (Emphasis supplied; footnote deleted.) Clearly, the privileged function of staff is to inform and advise the decision-maker; the Court does not hold that a delegation to staff members of decision-making authority would be similarly privileged. Rather, the record failed to support a charge of any such circumvention of the public meeting requirement. Thus the delegation issue was not properly before the Court.
Nor does Bennett v. Warden serve to shelter official acts delegated to staff from public scrutiny. In that case, Bennett, as president of St. Petersburg Junior College, met periodically in private with a group of junior-college employees to discuss working conditions at the junior college. This practice was challenged as violative of the Sunshine Law by a labor organizer frustrated in her attempts to unionize the employees. The Second District found no violation, holding, inter alia, that the meetings were not decision-making in nature, but were "for the purpose of `fact-finding' to assist him in the execution of [his] duties," 333 So.2d at 99, and we approve the holding that such fact-finding staff consultations are not subject to the Sunshine Law.
Bennett v. Warden is also the source of the second "exception" on which the district court relied, remoteness from the decision-making process. In examining the process by which information gathered in the informal meetings was analyzed, distilled and presented to the ultimate decision-making *941 body, the district court identified three additional steps to ratification of any decision based on information gathered at these meetings. But central to the holding that the committee was shielded by remoteness were the further findings that
the facts are that the members thereof are appointed by and serve at the pleasure of the appellant, President Bennett; that there is no evidence beyond the naked knowledge of its existence and function that the Board of Trustees [the ultimate decision-maker] has reserved or exerted any control of any nature, kind or description over the CEC; that the matters discussed between the President and the CEC are not policy matters but, rather, constituted fact-finding expeditions by the President as executive officer of the Board.
333 So.2d at 100. (Emphasis supplied.) There is no implication that any number of intermediary steps would shelter the committee from public scrutiny if it were to perform certain official acts which would shape or limit the final action taken by the Board of Trustees.
No official act which is in and of itself decision-making can be "remote" from the decision-making process, regardless of how many decision-making steps go into the ultimate decision. Neither can the fact that members of the committee were staff shelter its official acts from public scrutiny.
[W]hen a member of the staff ceases to function in his capacity as a member of the staff and is appointed to a committee which is delegated authority normally within the governing body, he loses his identity as staff while operating on that committee and is accordingly included within the Sunshine Law.
News-Press Publishing Co., 410 So.2d at 548.
Nothing in the foregoing opinion is intended to impugn the respondents' motivations or dedication to open government. We note that the concerns expressed in respondents' brief are real and reasonable ones. Respondents vigorously contend that opening the committee's meetings would threaten dearly held rights of academic freedom. This Court recognizes the necessity for the free exchange of ideas in academic forums, without fear of governmental reprisal, to foster deep thought and intellectual growth. Nonetheless, this freedom is not to be used as a shield which could, in some other case on other facts, be used to mask abuses of the rights of others. We hasten to reassure respondents that nothing in this decision gives the public the right to be more than spectators. The public has no authority to participate in or to interfere with the decision-making process. Were the chilling effect respondents apprehend balanced against any less compelling a consideration than Florida's commitment to open government at all levels, we might agree that the burdens herein imposed were unduly onerous. Nonetheless, we note that the dean search did take place entirely in the sunshine and that the faculty and the committee were more than equal to the challenges of the situation.
For the foregoing reasons, the decision of the First District is quashed and the decisions of the Second District and Third District are approved. We affirm the trial court's entry of declaratory judgment and the permanent injunction. The district court expressly declined to decide petitioners' entitlement to attorneys' fees and that issue is remanded to the district court for determination.[3]
It is so ordered.
ALDERMAN, C.J., ADKINS, BOYD and SHAW, JJ., concur.
OVERTON, J., concurs specially with an opinion.
McDONALD, J., dissents with an opinion.
*942 OVERTON, Justice, specially concurring.
I concur in the majority opinion. I write this concurring opinion to emphasize that it is important for public officials to recognize that this is the first decision of this Court which construes the "board or commission" provision of section 286.011, Florida Statutes (1981), to apply to committees established by a governmental executive. In Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974), the town council was clearly subject to the Sunshine Law. It established an advisory committee that functioned as an element of the council in its zoning responsibilities. This is somewhat different from the instant case, where the "executive" himself is not a "board or commission" under the open-meetings provision of the Sunshine Law. Allowing the town council in Gradison to create such a committee, which could meet in private, would clearly provide a means for governing bodies and boards to avoid the open-meetings requirement of the law. The majority holds that when the executive creates a committee and gives it decision- or policy-making authority (as distinguished from a fact-finding or a strictly advisory function), then the committee which has such authority must be subject to the Sunshine Law. I fully agree with the majority's approval of Bennett v. Warden, 333 So.2d 97 (Fla. 2d DCA 1976), and that decision's premise that a Sunshine Law violation does not occur when a government executive uses his staff for fact-finding and assistance in fulfilling his duties. See also Occidental Chemical Co. v. Mayo, 351 So.2d 336 (Fla. 1977). In my view, absent other constraints, a university president could examine the applications for a dean vacancy, have his staff verify the information, conduct personal interviews, and consult with selected faculty members concerning their views. Such a process would not violate the Sunshine Law as it now exists. It would be similar to the governor, or any other constitutional officer or department head, selecting his personnel and staff.
To avoid future problems, I suggest that executive branch officials clearly delineate the functions and responsibilities of any special boards, commissions, or committees they create to assist them in carrying out their responsibilities.
McDONALD, Justice, dissenting.
I dissent. The result reached by the district court should be approved.
Section 286.011, Florida Statutes (1979), does not apply to a search committee for a dean to a state university. It is quite evident that the legislature never intended or even contemplated that it would.[*] For that subsection to apply:
(1) There must be a state agency or authority.
(2) There must be a board or commission of that state agency or authority.
(3) Official acts are to be taken.
I see no express or implied finding of the legislature that a university in the State University System is a state agency or authority. Chapter 240, Florida Statutes, deals generally with postsecondary education in Florida, and it is that chapter, rather than section 286.011, that the majority depends on here. Section 240.2011 defines the State University System, but does not indicate that its members are agencies or authorities of the state. On the other hand, that chapter, by section 240.207, creates the Board of Regents and describes its powers and duties; by section 240.307 it *943 creates the State Community College Coordinating Board. These two bodies are obviously agencies of the state in supervising postsecondary education units.
The mission of the universities is not to govern or supervise, but rather is to develop human resources, to discover and disseminate knowledge, to extend knowledge and its application beyond the boundaries of its campuses, and the like. § 240.105(2). I recognize that the members of the State University System are subject to legislative enactments and that for budgetary purposes they are described as agencies. Nevertheless, I see no contemplation that an educational body was to be included within the purview of section 286.011.
I approve of the concept that what activities of a clearly designated state agency or authority subject to the Sunshine Law should be broadly construed, but I don't think that concept should extend as to what groups or organizations are covered. Article I, section 23, provides that,
Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein. This section shall not be construed to limit the public's right of access to public records and meetings as provided by law.
Hence, the determination of what is a public meeting vitally affects one's constitutional right of privacy.
To include a college dean search committee within the purview of the public meetings law will require all applicants to discard their rights of privacy. The committee discussion of the applicants must be conducted for all to hear. I would think that these factors would have a chilling affect on qualified applicants from stepping forward. I also feel that requiring public discussion of the merits or demerits of an applicant would deter free and open discussion of an applicant by the members of the group. When we are not clearly required to do so we should not place such an inhibition on applicants for a deanship; we should not impair free and open discussion of the applicants. The majority's opinion does both.
Even assuming that the state universities are state agencies or authorities, it is clear to me that search committees appointed to recommend to the president an appointee for a deanship were not intended to be subject to section 286.011. Subsection 240.209(2) excludes chancellor search committees from this statute even though the Board of Regents is surely a state authority. Subsection 240.319(3)(n) likewise excludes community college president search committees from the statute for the state agency known as the State Community College Coordinating Board. These provisions express a philosophy that search committees are not subject to the Sunshine Law. I have no doubt that, had the legislature contemplated that a member of the State University System was an agency within the contemplation of section 286.011, it would have declared that search committees formed to assist a university in fulfilling its powers and duties to appoint, remove, and reassign vice presidents, academic deans, and other policy level positions reporting directly to the president would not be subject to its provisions. Why indeed would a search committee formed to find a chancellor or a college president be excluded while a search committee to find a dean be included? The specific exclusion from 286.011 obviously was not made because no one contemplated a claim that such committees would be included.
Another cogent reason a search committee is not subject to section 286.011 is that it makes no official acts. It is simply an adviser, and here, is an adviser only to the faculty, which advises the president. On this issue I adopt the analysis of Judge Owen in the First District Court of Appeal's opinion. In this instance the search committee and, indeed, the entire faculty, to whom the committee reports, are the functional equivalent of staff. University rules and regulations require that faculty members serve on committees. This service is, therefore, an ordinary staff function and responsibility of cataloguing, evaluating, *944 and forwarding information. The official act in reference to a dean is the appointing of one, not the recommending of an appointment. I would not extend Krause v. Reno, 366 So.2d 1244 (Fla. 3d DCA 1979) to this case. If that case is good authority, I would distinguish it on the ground that there is a great deal of difference between a chief of police of a city and an educational dean. Education is different from the performance of police functions.
The only purpose of the committee here is to advise the faculty which advises the president of which persons, in its opinion, would be appropriate choices for dean. The decision-making power, the power to do an "official act," rests ultimately and solely with the president. Thus, the majority incorrectly sees this as "a delegation to staff members of decision-making authority," maj. op. at 940, and the majority's reliance on the cases cited as being in conflict with the instant opinion is misplaced. The district court properly relied on the "staff exception" in reaching its decision. Occidental Chemical Co. v. Mayo, 351 So.2d 336 (Fla. 1977); Bennett v. Warden, 333 So.2d 97 (Fla. 2d DCA 1976).
Finding the faculty search committee not subject to subsection 286.011(1) is a commonsense construction of that statute which will only serve to further the free exercise of academic and intellectual freedom. The majority advances a governmental interference into the selection of who is to lead an academic community which is totally inappropriate. In order to insure personal rights of privacy and academic freedom, legislation should be construed so that any intrusion is carefully limited. The majority has failed to do this.
I would approve the result reached by the district court.
NOTES
[1] Section 6-6(c) of the AALS bylaws states in part:

The faculty shall exercise substantial control over decanal and faculty appointments. (Emphasis added.)
The ABA Accreditation Standards, as interpreted by the ABA, require even more intimate involvement of the faculty with the selection. Interpretation 5 of Accreditation Standard 205, adopted by the ABA in December, 1978, provides:
The law faculty shall have a substantial degree of involvement in the process by which a law dean is selected, appointed, or (as to terms over one year) reappointed. The process should entail a joint effort by the law faculty and the university administration of (sic) governing board. Except in rare cases and for compelling reasons, a law dean shall not be appointed or reappointed over the objections of a majority of the law faculty. (Emphasis added.)
Accreditation is important to the University of Florida College of Law because article III, section 1(b) of the Rules of the Supreme Court Relating to Admissions to the Bar requires that to be eligible for admission to The Florida Bar one must have graduated from a school accredited either by the AALS or the ABA.
[2] 286.011 Public meetings and records; public inspection; penalties. 

(1) All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting.
[3] We note that Marston, as president of the University of Florida, is an agency as defined in section 119.011(2), Florida Statutes (1979). Marston and Baldwin have been relieved of any personal liability for attorneys' fees and costs pursuant to a stipulation entered into before the trial court by the parties that Marston and Baldwin were acting on the advice of the agency's attorneys. Apparently, the parties agreed before the district court that the University of Florida would be responsible for any attorneys' fees awarded. 425 So.2d at 588 (Wigginton, J., dissenting). We note that without stipulating as to entitlement, the parties did stipulate to an amount which would be a reasonable award for fees and costs of representing appellees before the district court.
[*] § 240.227, Fla. Stat. (1979), sets out the powers and duties of the universities, one of which, § 240.227(5), is involved here. If paragraph (5) is subject to § 286.011, it would seem that the activities prescribed in the other 25 paragraphs of § 240.227 would also have to be conducted in the sunshine.