Mr. Donald J. Lunny City Attorney City of Plantation 800 E. Broward Boulevard Suite 505 Cumberland Building Fort Lauderdale, Florida 33301
Dear Mr. Lunny:
This is in response to your request for an opinion on substantially the following question:
 WHETHER AN AD HOC COMMITTEE APPOINTED BY THE MAYOR FOR THE PURPOSE, AMONG OTHER THINGS, OF MAKING RECOMMENDATIONS TO THE MAYOR CONCERNING LEGISLATION IS SUBJECT TO THE SUNSHINE LAW.
You state in your letter that the Mayor of the City of Plantation has requested a formal Attorney General's opinion on whether an ad hoc committee appointed by him is sufficiently removed from the decisional process of government so as to be exempted from the Florida Government in the Sunshine Law, s. 286.011, F.S. The following facts are supplied in your inquiry. The City of Plantation is a strong mayoral form of municipal government with a five-member city council serving as the legislative body vested with the power to enact ordinances and resolutions. The mayor votes only in the case of a tie and has the power to veto any legislative enactments; the city council may override such veto by a four-fifths (4/5) vote. The committee in question, designated as a "committee standards committee," is appointed by the mayor and is composed of ten resident citizens of Plantation. The mayor has charged the advisory committee "to furnish him with such fact-finding and assistance as he might from time-to-time request so as to better enable him to make recommendations as he might find noteworthy to the legislative body on legislative enactments which might better enhance the community reputation and standards of Plantation." You go on to state:
 The Mayor is free to disband his committee whensoever he sees fit and to follow or not follow the advice or recommendations of such ad hoc committee as he determines to be in the best interest of fulfilling his perceived position as a community spokesman and leader in recommending legislation to our City Council. No elected official other than the Mayor meets with this committee or is a member of the committee. No employee of the City who would meet the statutory definition of a local officer is a member of the committee — in short, the committee consists of ten non-related citizen residents whom the Mayor feels give him an adequate cross-sectional view of the community to assist him in formulating his policies and recommendations. The City Council had no say whatsoever in whether the Mayor's ad hoc committee was to be formed nor did any member of the Council suggest names of members to be included within such committee nor has any member of the City Council attended a meeting of the committee or ever "endorsed" the existence of the committee or its goals. (e.s.)
Based upon these factual circumstances, you inquire whether the Government in the Sunshine Law is applicable to meetings of the community standards committee.
Section 286.011, F.S., the Government in the Sunshine Law, in pertinent part, provides:
 (1) All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting.
The Legislature, in adopting this law, "intended to extend application of the `open meeting' concept so as to bind every `board or commission' of the state, or of any county or political subdivision over which it has dominion or control." City of Miami Beach v. Berns, 245 So.2d 38, 40 (Fla. 1971). It is the entire decision-making process which the Legislature intended to affect by the enactment of s. 286.011. See, Times Publishing Company v. Williams, 222 So.2d 470 (2 D.C.A. Fla., 1969); Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969). Thus, the courts have held that an ad hoc advisory board, whose powers are limited to making recommendations to a public agency and which possesses no authority to bind said agency in any way whatsoever, is subject to the terms of s. 286.011. See, Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974), wherein the Court concluded that an advisory board or committee appointed by a governmental body to make recommendations to the appointing authority and deliberating on matters upon which foreseeable action will be taken is subject to the Sunshine Law; in so doing the Court construed the scope of s. 286.011 to include the "inquiry and discussion stages" of meetings of public bodies. See also, Ruff v. School Board of Collier County, 426 So.2d 1015 (2 D.C.A. Fla., 1983); and Krause v. Reno, 366 So.2d 1244 (3 D.C.A. Fla., 1979), wherein the court held that once a city manager utilized an advisory group to assist him in screening applications and making recommendations for the position of chief of police, he created a "board" to which the Sunshine Law was applicable.
In Town of Palm Beach v. Gradison, supra, the town council had nominated a planning commission composed of lay citizens for purposes of recommending changes for updating and revising the town's zoning ordinances. The Court concluded that "the nature of the committee and its function reached the status of a board or commission that to act legally must comply with the sunshine law." Id. at 475. The Supreme Court further stated at 476, that "any committee established by the Town Council to act in any type of advisory capacity would be subject to the provisions of the government in the sunshine law." And see, Krause v. Reno, supra, wherein the district court held that the Sunshine Law was applicable to an advisory board appointed by an executive officer. The court held that once a city manager appointed an advisory group to assist him in screening applications and making recommendations for the position of chief of police, the city manager (although a chief executive officer) created a "board" to which the Sunshine Law was applicable, and further held that the city manager was an "agency" as that term is used by the Sunshine Law. And see, Ruff v. School Board of Collier County, supra, a later decision of the Second District Court of Appeal relying upon the Krause v. Reno decision in concluding, among other things, that the Sunshine Law is applicable to an organizational meeting of the county school board sex education policy task force.
You question whether the test espoused in Bennett v. Warden,333 So.2d 97 (2 D.C.A. Fla., 1976), should be applied in the instant situation to reach a similar conclusion. In Bennett v. Warden, the Second District Court of Appeal determined that meetings between an executive officer and advisors, consultants, staff or personnel under his direction were not meetings within the contemplation of the Sunshine Law since such meetings were "for the purpose of `fact-finding' to assist him in the execution of [his] duties." The court in Bennett v. Warden also concluded that the meetings in question were too remote from the decision-making process to be covered by the Sunshine Law. Cf., Cape Publications v. City of Palm Bay, 10 FLW 1588 (5 D.C.A. Fla., 1985), holding that the Sunshine Law was inapplicable to group of persons sitting in when the city manager interviewed applicants he had selected when sole function of group was to ask questions of a technical nature such as would help the city manager better understand qualifications of applicants since "[t]he group was delegated no authority; they did not select or screen applicants, and they were not authorized or delegated the responsibility of making recommendations." The Florida Supreme Court in Wood v. Marston, 442 So.2d 934
(Fla. 1983), recently examined the district court's decision in Bennett v. Warden, supra. In Wood, the Supreme Court approved the holding in Bennett v. Warden, supra, that fact-finding staff consultations were not subject to the Sunshine Law; however, the Court rejected the claim that the committee was shielded by remoteness. "There is no implication that any number of intermediary steps would shelter the committee from public scrutiny if it were to perform certain official acts which would shape or limit the final action taken by the Board of Trustees. No official act which is in and of itself decision-making can be `remote' from the decision-making process, regardless of how many decision-making steps go into the ultimate decision."442 So.2d at 941. Thus, the fact that there are a number of intermediate steps made in the decision-making process does not in and of itself shield the meetings in question from the Sunshine Law.
Based upon the foregoing decisional law and the information that you have supplied this office concerning the nature and function of the "community standards committee" appointed by the mayor, I cannot say that the activities of this committee are limited to fact-finding; rather the committee gives advice and makes recommendations to the mayor concerning "legislative enactments which might better enhance the community reputation and standards" and "to assist [the mayor] in formulating his policies and recommendations." Nor can I conclude that "remoteness" from the decision-making process removes the activities of the committee from the Sunshine Law in light of the Supreme Court's decision in Marston v. Wood, supra. Therefore, I am of the opinion that, unless and until judicially determined otherwise, the community standards committee is subject to and must comply with the requirements of the Government in the Sunshine Law, s. 286.011, F.S.
In sum, I am of the opinion that a community standards committee which is appointed by the mayor to assist him in formulating his policies and recommendations and which gives advice and makes recommendations to the mayor concerning legislative enactment standards is subject to the Government in the Sunshine Law.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General