Mr. E. William Crotty Attorney for Board of Directors Halifax Healthy Families Corporation 501 North Grandview Avenue Daytona Beach, Florida 32118
Dear Mr. Crotty:
On behalf of the Board of Directors of the Halifax Healthy Families Corporation, you ask substantially the following question:
Are proceedings in a quality assurance program established by Halifax Healthy Families Corporation, designed solely to carry out peer review of physicians, exempt from compliance with the Government in the Sunshine Law pursuant to section 395.0193, Florida Statutes?
In sum:
The exemption provided in section 395.0193, Florida Statutes, for meetings of peer review panels of facilities licensed under chapter 395, Florida Statutes, does not apply to the Halifax Healthy Families Corporation.
This office has been advised that the Halifax Healthy Families Corporation (HHFC) was established to continue a school-based health insurance program for children established by the Florida Healthy Kids Corporation in Volusia County and to expand the program to include all family members.[1] This office has further been advised that HHFC does not own, operate, or maintain any hospitals, health clinics, or other health facilities, and according to your letter is not a health care provider.
You state that the HHFC is subject to the Government in the Sunshine Law, section 286.011, Florida Statutes. That statute requires that meetings of a board or commission subject to its terms must be conducted in the sunshine.[2] You ask whether HHFC may utilize the exemption from the Government in the Sunshine Law provided in section 395.0193, Florida Statutes, when conducting proceeding designed solely to carry out peer review of physicians.
Section 395.0193, Florida Statutes, requires each facility licensed pursuant to chapter 395, Florida Statutes, to provide for peer review of physicians who deliver health care services at the facility. Each facility is required to develop written, binding procedures for conducting such review.[3] If a reasonable belief exists that conduct by a staff member or physician who delivers health care services at the licensed facility may constitute grounds for discipline, a peer review panel shall investigate and determine whether grounds for discipline exist and the governing board of the licensed facility, after considering such recommendations, shall take appropriate action after a final determination has been made that one of the statutorily enumerated grounds exists.[4]
Section 395.0193(6), Florida Statutes, provides:
The proceedings and records of peer review panels, committees, and governing boards or agent thereof which relate solely to actions taken in carrying out this section are not subject to inspection under s. 119.07(1); and meetings held pursuant to achieving the objectives of such panels, committees, and governing boards are not open to the public under chapter 286. . . .
In addition, the investigations, proceedings, and records of the peer review panel, a committee, a disciplinary board, or a governing board, or agent thereof with whom there is a specific written contract for that purpose, are not subject to discovery or introduction into evidence in any civil or administrative action against a provider of professional health services arising out of the matters that are the subject of evaluation and review by such group or its agent.[5]
"Licensed facility" is statutorily defined to mean a hospital or ambulatory surgical center licensed in accordance with the provisions of chapter 395, Florida Statutes.[6] The term "hospital" is defined to mean any establishment that:
(a) Offers services more intensive than those required for room, board, personal services, and general nursing care, and offers facilities and beds for use beyond 24 hours by individuals requiring diagnosis, treatment, or care for illness, injury, deformity, infirmity, abnormality, disease, or pregnancy; and (b) Regularly makes available at least clinical laboratory services, diagnostic X-ray services, and treatment facilities for surgery or obstetrical care, or other definitive medical treatment of similar extent.[7]
"Ambulatory surgical center" is defined for purposes of chapter 395, Florida Statutes to mean "a facility the primary purpose of which is to provide elective surgical care, in which the patient is admitted to and discharged from such facility within the same working day and is not permitted to stay overnight, and which is not part of a hospital."[8]
As discussed supra, HHFC does not own, operate, or maintain any hospitals, health clinics or other health facilities, and is not a health care provider. The corporation, therefore, does not fall within the statutory definitions for "licensed facility," "hospital" or "ambulatory surgical center." Nor has this office been provided with any information indicating that a licensed facility has a specific written contract with HHFC for HHFC to act as the facility's agent in peer review.
Exemptions from the open government laws are to be strictly construed.[9] Inasmuch as HHFC does not fall within the plain language of section 395.0193, Florida Statutes, this office has no authority to extend the exemption to cover the activities performed by HHFC.[10]
Accordingly, absent specific exemption I am of the opinion that the provision contained in section 395.0193, Florida Statutes, exempting meetings of peer review panels held solely to achieve the objectives of that section, does not apply to the Halifax Healthy Families Corporation.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, s. 624.91, Fla. Stat. (1993), creating the Florida Healthy Kids Corporation.
[2] See, s. 286.011(1), Fla. Stat. (1993), providing:
All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision, except as otherwise provided in the Constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting.
And see, Hough v. Stembridge, 278 So.2d 288 (Fla. 3d DCA 1973) sunshine law applicable to any gathering, whether formal or casual, of two or more members of the same board or commission to discuss some matter on which foreseeable action will be taken.
[3] Section 395.0193(2), Fla. Stat. (1993), requires that such procedures include:
(a) Mechanism for choosing the membership of the body or bodies that conduct peer review. (b) Adoption of rules of order for the peer review process. (c) Fair review of the case with the physician involved. (d) Mechanism to identify and avoid conflict of interest on the part of the peer review panel members. (e) Recording of agendas and minutes which do not contain confidential material, for review by the Division of Health Quality Assurance of the agency. (f) Review, at least annually, of the peer review procedures by the governing board of the licensed facility. (g) Focus of the peer review process on review of professional practices at the facility to reduce morbidity and mortality and to improve patient care.
[4] Section 395.0193(3), Fla. Stat. (1993). The governing board may suspend, deny, revoke or curtail the privileges, or reprimand, counsel, or require education, of any such staff member or physician.
[5] Section 395.0193(7), Fla. Stat. (1993). Cf., s. 641.515, Fla. Stat. (1993), and s. 641.55, Fla. Stat. (1994 Supp.), in which the Legislature has exempted certain quality assurance assessments and internal risk management program records of health maintenance organizations.
[6] Section 395.002(17), Fla. Stat. (1993).
[7] Section 395.002(12), Fla. Stat. (1993). Exempted from the statute are institutions conducted by or for the adherents of any well-recognized church or religious denomination that depends exclusively on prayer or spiritual means to heal, care for, or treat any person. In addition, for purposes of local zoning, the term "hospital" includes a medical office building located on the same premises as a hospital facility, provided the land on which the medical office building is constructed is zoned for use as a hospital and the premises were zoned for hospital purposes on January 1, 1992.
[8] Section 395.002(4), Fla. Stat. (1993). The statute exempts from the definition of "ambulatory surgical center" facilities existing for the primary purpose of performing terminations of pregnancy, offices maintained by physicians for the practice of medicine, or offices maintained for the practice of dentistry, provided that any facility or office that is certified or seeks certification as a Medicare ambulatory surgical center shall be licensed as a ambulatory surgical center pursuant to section395.003, Florida Statutes.
[9] See, Board Of Public Instruction Of Broward County v. Doran,224 So.2d 693 (Fla. 1969). Cf., Seminole County v. Wood,512 So.2d 1000 (Fla. 5th DCA 1987), review denied, 520 So.2d 586 (Fla. 1988) (Public Records Law is to be liberally construed in favor of open government and exemptions from disclosure are to be narrowly construed); Wood v. Marston, 442 So.2d 934 (Fla. 1983) (as policies behind the Public Records Law and the Sunshine Law are similar, they should be read together).
[10] You refer to Attorney General Opinion 92-29, in which this office concluded that to the extent that a joint meeting of the quality assurance committee and board of directors of a county general hospital was held to carry out the provisions of section 395.0115, Florida Statutes 1991 (now section 395.0193, Florida Statutes), the exemption provided by that statute would be applicable. Unlike the instant inquiry, however, the facility under consideration in that opinion was licensed under chapter 395, Florida Statutes.