Mr. Michael S. Davis St. Petersburg City Attorney Post Office Box 2842 St. Petersburg, Florida 33731
Dear Mr. Davis:
You have requested my opinion on substantially the following questions:
1. Are documents created or received by the Florida International Museum, Inc., after the date of execution of its purchase/lease/option agreement with the City of St. Petersburg subject to disclosure under Chapter 119, Florida Statutes, the Public Records Law?
2. Are meetings of the Board of Trustees of the Florida International Museum, Inc., subject to the requirements of section286.011, Florida Statutes, the Government in the Sunshine Law, after the date of execution of the purchase/lease/option agreement?
In sum:
1. Documents created or received by the Florida International Museum, Inc., on or after the execution of its purchase/lease/option agreement with the City of St. Petersburg are subject to the provisions of the Public Records Law, Chapter 119, Florida Statutes.
2. Following execution of the purchase/lease/option agreement with the City of St. Petersburg, the meetings of the Board of Trustees of the Florida International Museum, Inc., are subject to the Government in the Sunshine Law.
According to information you have submitted, the Florida International Museum, Inc., (the "museum") was created by an independent group of citizens as a non-profit Florida corporation to present cultural exhibitions in downtown St. Petersburg. The City of St. Petersburg provided a loan guarantee of $1.5 million to the museum and several private corporations and individuals also provided direct loans and/or loan guarantees and pledges to the museum.
Earlier this year the City of St. Petersburg agreed to buy the building owned by the Florida International Museum, Inc., for its fair market value and lease it back to the museum for 29 months for the purpose of continuing the exhibitions presented by the museum. The city entered into a purchase/lease/option agreement with the museum in which the museum will pay all fees for maintenance, the ground lease payments, and the property taxes as owner of the property. Your questions relate to the applicability of the Public Records Law and Sunshine Law to the Florida International Museum, Inc., following the execution of this agreement.
Question One — Public Records
Florida's Public Records Law, Chapter 119, Florida Statutes, requires that records which are made or received in connection with the transaction of official business by any "agency" must be open for inspection in the absence of a statute exempting such records or making the records confidential.[1] An "[a]gency" is defined for purposes of the Public Records Law to include private corporations acting on behalf of any public agency.[2]
In deciding whether a private entity is "acting on behalf of" a public agency the courts have adopted a totality of factors approach. As articulated by The Supreme Court of Florida,[3] this analysis involves consideration of the following factors to determine whether a private organization is an "agency" for purposes of Chapter 119:
1) Creation — did the public agency play any part in the creation of the private entity?
2) Funding — has the public agency provided substantial funds, capital or credit to the private entity or is it merely providing funds in consideration for goods or services rendered by the private entity?
3) Regulation — does the public agency regulate or otherwise control the private entity's professional activity or judgment?
4) Decision-making Process — does the private entity play an integral part in the public agency's decision-making process?
5) Governmental Function — is the private entity exercising a governmental function?
6) Goals — is the goal of the private entity to help the public agency and the citizens served by the agency?
Using this test initially in News and Sun-Sentinel Company v.Schwab, Twitty Hanser Architectural Group, Inc., 596 So.2d 1029
(Fla. 1992), the Court concluded that an architectural firm under contract with a school board to provide architectural services associated with the construction of school facilities was not "acting on behalf of" the school board. Therefore, the architectural firm was not subject to the requirements of Chapter 119, Florida Statutes.
Several earlier district court opinions were relied upon by theSchwab Court in developing the totality test. In Schwartzman v.Merritt Island Volunteer Fire Department,[4] the district court held that a nonprofit volunteer fire department was subject to Chapter 119, Florida Statutes. The court based its conclusion on the fact that the fire department had been given stewardship over firefighting, that it conducted its activities on public property, and that it was funded in part by public money.
This office has also relied on the totality test developed inSchwab to analyze whether a private organization may be subject to the Public Records Law. For example, in Attorney General's Opinion 92-37, this office considered whether the Tampa Bay Performing Arts Center, Inc., which was created as a private not-for-profit corporation for the cultural and educational enhancement of the general public was subject to Chapter 119, Florida Statutes. Although the center had been created by private individuals, this office determined that the city and county could exercise considerable control over the corporation by virtue of the fact that seven of the fifteen members on the center's board of trustees were city or county officials or were appointed by the mayor. In addition the center operated a publicly owned facility and performed a public function.
Although the lease provided that the center operated the facilities as an independent contractor, this office noted that the center was authorized to request and had received some public funding. While not created by a public agency, this office concluded that the center was an "agency" for purposes of Chapter 119, Florida Statutes, because it was governed by a board of trustees composed of a number of public officials or appointees of public officials, was using public property to carry out its goals and was performing a function that the city had recognized as a governmental function.[5]
The subject under consideration in Attorney General's Opinion 92-53, was the John and Mable Ringling Museum of Art Foundation, Inc., a not-for-profit corporation which operated as the direct-support organization for the John and Mable Ringling Museum of Art. In determining that the foundation was an "agency" for purposes of Chapter 119, Florida Statutes, this office noted that the foundation was created solely to enhance the museum. It operated for the benefit of the museum and its programs. The foundation and its annual budget had to be approved by the board. Property of the foundation would revert to the state after three years while funds and property held in trust by the foundation would revert to the museum if the foundation was dissolved or no longer approved by the museum. Members of the foundation's board of directors were named by the museum's board of directors and the museum board had served as the foundation's board of directors. Many of the foundation's activities were conducted on publicly owned property.
In determining whether the Florida International Museum, Inc., is an "agency," the following factors lead me to conclude that the museum does fall within the scope of that term for purposes of the Public Records Law. While the museum was created as a private not-for-profit corporation, the city has the right to monitor and audit all aspects of the activities carried out by the museum.[6]
The scope of services offered by the museum may only be altered through the prior written approval of the mayor.[7] The city reviews the museum's budget and the museum cannot incur debt without approval of the city council.[8] The museum must report and the city monitors all of the contract services performed by the museum.[9] With regard to funding, the city is required to budget and appropriate sufficient monies as required by the museum.[10] The city owns the building in which the museum operates and leases it back to the museum with an option for the city to repurchase the property. In addition, the city provides a $1,500,000 loan guarantee for an outstanding loan to the museum.[11] The government functions and goals which the museum satisfies on behalf of the city are the presentation of artistic and cultural exhibitions for the education and entertainment of residents of the city and the general public and to contribute to the financial enhancement of the city.[12]
Based on an examination of all these factors, it is my opinion that Florida International Museum, Inc., is an agency of the City of St. Petersburg for purposes of the Public Records Law, Chapter 119, Florida Statutes.
Question Two — Government in the Sunshine Law
Section 286.011(1), Florida Statutes, the Government in the Sunshine Law, provides:
"All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times. . . ."
The courts have stated that the Sunshine Law should be liberally construed to give effect to its public purpose.[13] Moreover, both the courts and this office have advised officials that if they are in doubt as to the applicability of the law, they should comply with the open-meeting policy of the state.[14]
Although private organizations are generally not subject to the Sunshine Law, section 286.011, Florida Statutes, has been held applicable to private organizations in order to avoid a circumvention of the statute. In determining whether a private organization is subject to the Sunshine Law, this office usually reviews all the factors relating to the responsibilities of the private entity and its relationship with the public agency. Based on such a review, it was concluded in Attorney General's Opinion 92-53, that the John and Mable Ringling Museum of Art Foundation, Inc., was subject to the Sunshine Law. The foundation was created pursuant to statute. Although it was a not-for-profit corporation, its purpose was to assist the museum in carrying out its activities by raising funds for the museum and in performing this function the foundation was authorized to use museum property. The foundation's records were subject to the Public Records Law and open to public inspection with a limited exception for information identifying donors.[15] The board of directors of the foundation also served as the trustees for the museum. The ties between the foundation and the museum were substantial and, in keeping with a liberal construction of the Sunshine Law, this office concluded that meetings of the foundation were subject to section 286.011, Florida Statutes.
The situation you have presented is similar to that of the John and Mable Ringling Museum of Art Foundation, Inc. While the Florida International Museum, Inc., was created as a private not-for-profit corporation, the purpose of the museum is the presentation of artistic and cultural exhibitions for the education and entertainment of residents of the City of St. Petersburg and to contribute to the financial enhancement of the city. The building in which the museum is located is owned by the city and the city makes a substantial financial contribution toward the operation of the museum. The city takes an active role in monitoring and auditing all the activities of the museum and reviews all future museum budgets. The city appoints two honorary members to the museum's board of directors to act as public observers. These honorary members may participate in discussions and have access to all information normally made available to voting members of the board although they have no right to vote. Finally, as discussed above, the records of the museum are subject to the Public Records Law and this factor may be used in determining the applicability of the Sunshine Law.
In light of the substantial interaction between the City of St. Petersburg and the Florida International Museum, Inc., Board of Trustees in the operation of the museum and acknowledging the courts' directive that the Sunshine Law is to be liberally construed, it is my opinion that the meetings of the Florida International Museum, Inc., Board of Trustees are subject to the provisions of section 286.011, Florida Statutes, upon the execution of the purchase/lease/option agreement with the City of St. Petersburg.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, s. 119.011(1), Fla. Stat. (1996 Supp.), defining "Public records" and Shevin v. Byron, Harless, Schaffer, Reid andAssociates, 379 So.2d 633 (Fla. 1980).
[2] Section 119.011(2), Fla. Stat. (1996 Supp.).
[3] See, News and Sun-Sentinel Company v. Schwab, Twitty Hanser Architectural Group, Inc., 596 So.2d 1029 (Fla. 1992).
[4] 352 So.2d 1230 (Fla. 4th DCA 1977).
[5] And see, Ops. Att'y Gen. Fla. 94-35 (1994) (Sunshine State One-Call of Florida, Inc., created by statute as a not-for-profit organization, governed by board of directors that may include public officials, operating by utilizing, in part, fees paid by public agencies, with public funds, and exercising a governmental function, i.e., the protection of the public from injury, is agency for purposes of Ch. 119); 94-32 (1994) (Florida Windstorm Underwriting Association created pursuant to plan as recognized by statute and which carries out a governmental function was subject to Ch. 119).
[6] Purchase/Lease/Option Agreement between City of St. Petersburg, Florida and Florida International Museum, Inc., Pt. I, D.2.A.
[7] Agreement, id. at Pt. 1, A.3.
[8] Agreement, supra fn. 6, Pt. I, D.1.F.
[9] Agreement, supra fn. 6, Pt. I, D.2.A.
[10] Agreement, supra fn. 6, Pt. II, A.2.
[11] Agreement, supra fn. 6, Pt. I, C.1.B. and G.5.
[12] Agreement, supra fn. 6, Whereas clause.
[13] See, e.g., Board of Public Instruction of Broward County v.Doran, 224 So.2d 693 (Fla. 1969); Wood v. Marston, 442 So.2d 934
(Fla. 1983) (statute should be broadly construed to effect its remedial and protective purposes).
[14] See, e.g., Town of Palm Beach v. Gradison, 296 So.2d 473,477 (Fla. 1974) ("[t]he principle to be followed is very simple: When in doubt, the members of any board, agency, authority or commission should follow the open-meeting policy of the State.")
[15] See, Wood v. Marston, 442 So.2d 934 (Fla. 1983), in which The Supreme Court of Florida recognized that the Public Records Law was analogous to the Sunshine Law and looked to Ch. 119, Fla. Stat., to assist it in determining whether a state university was an agency subject to the Sunshine Law. And see, Krause v. Reno,366 So.2d 1244 (Fla. 3d DCA 1979).