800 So.2d 302 (2001)
DADE AVIATION CONSULTANTS, a joint venture, Appellant,
v.
KNIGHT RIDDER, INC., publisher of the Miami Herald, Appellee.
No. 3D01-1460.
District Court of Appeal of Florida, Third District.
October 31, 2001.
Rehearing and Certification Denied December 5, 2001.
*303 Tew Cardenas, Rebak Kellogg Lehman DeMaria Tague Raymond & Levine and William T. McCauley, Miami; Carlton Fields and Benjamine Reid, Miami, and Robert E. Biasotti, St. Petersburg, and Amy Lane Hurwitz, for appellant.
Steel Hector & Davis and Alvin B. Davis and Nikki B. Lewis, Miami, for appellee.
Before GODERICH, SHEVIN and RAMIREZ, JJ.
SHEVIN, J.
Dade Aviation Consultants, a Joint Venture ["DAC"], appeals a final summary judgment ordering DAC to produce records it withheld from Knight Ridder, Inc., as publisher of "The Miami Herald" ["Herald"], in response to the Herald's records request. We affirm.
In 1992, Miami-Dade County was planning a ten-year multi-million dollar expansion and renovation of Miami International *304 Airport. The Dade County Aviation Department recommended that a General Consultant be hired to serve as an extension of the Aviation Department's staff in overseeing and managing the massive expansion project. To that end, the County issued an "Aviation Department General Consultant Request for Qualifications." The Request suggested that the applicants be a "multi-disciplinary team of professionals," or a "team of firms," capable of supporting the Aviation Department staff in the various capacities required for the project.
Eight engineering and construction firms entered into a joint venture agreement named Dade Aviation Consultants, a Joint Venture, to respond to the County's Request. The joint venture was created "for the purpose of performing the Contract [with the County]." DAC performs no other business or function. The County awarded the consultancy to DAC, and the eight joint venturers entered into one Professional Services Agreement ["PSA"] with the County. Pursuant to the PSA, DAC's role and function is "as special support staff to the Dade County Aviation Department. [DAC] is to provide, as directed by [the Department], the management of engineering, architectural, and other technical support services necessary to assure orderly airport development...." In fact, the Department's Director saw DAC as an extension of the senior level airport staff. By DAC's own admission, "when [DAC] performs services under the [PSA] with the Aviation Department, [DAC] acts on behalf of the County."
Early on in DAC's operations, DAC met with resistance from competitors and from County employees. DAC decided to hire lobbyists as part of its team, to facilitate DAC in carrying out its PSA obligations.
In 1998, a Herald reporter wrote a letter to the Department Director requesting access to DAC documents involving PSA performance, including records pertaining to the lobbyists DAC hired. The Director forwarded the letter to DAC. DAC responded and supplied certain records. DAC withheld other records, particularly those pertaining to expenses associated with its lobbyists, asserting that they were not public records and did not have to be disclosed.
The Herald filed a lawsuit under Chapter 119, the Public Records Act, requesting an injunction mandating DAC to produce the documents. DAC asserted that it was not properly served with the request, and that it was not required to disclose any documents that were not public records, to wit: records regarding lobbyist payments, and other non-reimbursable expenses.
The trial court entered summary final judgment in the Herald's favor. The court ordered DAC to produce the documents. DAC appealed from that portion of the order. The court also denied the Herald's request for fees. That denial is the subject of a separate appeal.
Chapter 119, the Public Records Act ["Act"] affords the public access to certain government documents. § 119.01,.07(3), Fla. Stat (2000). The Act is to be construed liberally in favor of openness. Woolling v. Lamar, 764 So.2d 765 (Fla. 5th DCA 2000), review denied, 786 So.2d 1186 (Fla.2001). When there is any doubt, the court should find in favor of disclosure. City of St. Petersburg v. Romine, 719 So.2d 19, 21 (Fla. 2d DCA 1998). The only records that are exempt from production under the Act are those that are so delineated by the statute or those that are expressly exempted by general or special law. § 119.07(3), Fla. Stat. (2000); Wait v. Florida Power & Light Co., 372 So.2d 420 (Fla.1979); Miami Herald Pub. Co. v. City of North Miami, 452 So.2d 572 (Fla. 3d *305 DCA 1984). The Act applies to all agencies, including any "business entity acting on behalf of any public agency." § 119.011(2), Fla. Stat. (2000).[1]
The issue in this case is whether DAC falls under the definition of "agency," such that it has to comply with the Herald's records request. We find that it does, and hold that the trial court properly required disclosure.
Whether a private entity under contract with a government agency is required to disclose records under the Act depends on the analysis of several factors delineated in News and Sun-Sentinel Co. v. Schwab, Twitty & Hanser Architectural Group, Inc., 596 So.2d 1029 (Fla.1992). Moreover, notwithstanding the analysis of these individual factors, "it is the totality of factors that controls the determination." Memorial Hospital-West Volusia, Inc. v. News-Journal Corp., 729 So.2d 373, 379 (Fla.1999) (citing Schwab, at 1031-32). The totality of the factors in this case demonstrate that the trial court properly ordered DAC to disclose the documents. Additionally, a Schwab factors analysis supports that conclusion. We address each Schwab factor in turn.
Funding: The level of public funding received by the business entity: We are not persuaded by DAC's argument that although it receives "public funds," it is not the recipient of "public funding." The record demonstrates that this is a very lucrative contract. Whatever label DAC chooses to place on the payments it receives from the County, here, as in Schwab, we see a significant public investment in the airport project.
Commingling of Funds: Whether there is commingling of funds: Here, all monies DAC receives from the County are placed in an account, and transferred from that account to make disbursements. It is significant that DAC's sole source of business revenue is the PSA contract funds. DAC engages in no other business as it was created expressly to fulfill the PSA. To that extent, there can be no commingling. Even if the joint venture partners occasionally invest some money in the venture, it would appear that both County funds and joint venture partner funds are being used to pay DAC expenses.
Public Property: Whether the activity is conducted on publicly-owned property: In this case, DAC's offices are provided by the Department at no cost, on airport property. This was arranged to facilitate DAC in carrying out its PSA obligations.
Decision-making Process: Whether DAC's contractual services are an integral part of the government agency's decision-making process: We must find that they are because the record reveals, without qualification, that if the County had not *306 hired a consultant, the Department would be performing the services DAC now renders.
Governmental Function: "[W]hether the private entity is performing a governmental function or a function which the public agency otherwise would perform." Schwab, at 1031, 1032. DAC has conceded that "when [DAC] performs services under the [PSA] with the Aviation Department, [DAC] acts on behalf of the County." This is a case where "a private actor performs the public function in place of the public body" pursuant to the terms of "an agreement." Memorial Hospital-West Volusia, at 381.
Regulation: The extent of the Department's control over DAC: Although the Aviation Department has no voting interest in DAC, or ownership control of DAC, it does have substantial control over DAC by virtue of DAC's PSA performance requirements. Moreover, DAC was viewed as an extension of the Department's senior management levels. With this level of accountability, it is only logical to conclude that the Department is ultimately in control of DAC's performance.
Creation: It's obvious that the Department did not create DAC. DAC was created by the eight entities that entered into the PSA. However, DAC was designed to fulfill the County-created consultant position. Here, as in News-Journal Corp. v. Memorial Hospital-West Volusia, Inc., 695 So.2d 418 (Fla. 5th DCA 1997), affirmed, 729 So.2d 373 (Fla.1999), DAC would not have been created but for the County's encouragement of these types of joint ventures to meet the Department's needs.
Financial Interest: Whether the government agency has a substantial financial interest in the private entity. "Certainly not as an investor. Nevertheless, as discussed in the level of public funding category above, it has a substantial financial interest in the venture." News-Journal Corp., 695 So.2d at 422.
Benefits: For whose benefit is DAC functioning: Although DAC is obviously functioning primarily for its own financial interest and that of its joint venturers, DAC functions for the benefit of the Aviation Department in the very practical sense that it provides services that the Department would otherwise perform.

Totality of Factors
Most significantly, the record reveals that the purpose of the lobbyists and the expenditure records the Herald is seeking to discover, was to ease the resistance DAC was meeting in response to its assumption of the duties involved in the PSA. As such, DAC's argument, that those expenditures are unrelated to the PSA, and part of its private business not subject to disclosure, has no merit.
DAC's reliance on Harold v. Orange County, 668 So.2d 1010 (Fla. 5th DCA 1996), Sarasota Herald-Tribune Co. v. Community Health Corp., 582 So.2d 730 (Fla. 2d DCA 1991), and Fox v. News-Press Pub. Co., 545 So.2d 941 (Fla. 2d DCA 1989), is unavailing. In those cases, as in Schwab, the private entities were business concerns with a government agency as one of its clients. In contrast, DAC was created for the express purpose of fulfilling the PSA to help the Department. DAC doesn't have any other clients or business. Hence, DAC's argument that just because it does a job, not everything it does is public, is unconvincing. DAC's only job is the PSA.
This case is analogous Memorial Hospital-West Volusia, Putnam County Humane Soc., Inc. v. Woodward, 740 So.2d 1238 (Fla. 5th DCA 1999), Prison Health Serv., Inc. v. Lakeland Ledger Pub. *307 Co., 718 So.2d 204 (Fla. 2d DCA 1998), and Stanfield v. Salvation Army, 695 So.2d 501 (Fla. 5th DCA 1997), where the private entities provide services otherwise provided by the government. These were not business entities with a broad client base, that happened to perform an isolated contract for a government client. These cases illustrate the principle that when a private entity undertakes to provide a service otherwise provided by the government, the entity is bound by the Act, as the government would be. Here, DAC is bound by the Act.
In conclusion, we hold that under the circumstances of this case the requested records are subject to disclosure pursuant to Chapter 119, Florida Statutes. The trial court's summary judgment is therefore
Affirmed.
NOTES
[1] As a threshold issue, we are not persuaded by DAC's argument that it was not properly served with written notice by the Herald. There is no requirement in the Public Records Act that requests for records must be in writing. Section 119.07(2)(c), dictates that a records custodian asserting an exemption to production of a document, may not dispose of the document for thirty days after a written request to examine records. This subsection precludes destruction of the disputed documents. Nowhere in the plain language of the Act is there a requirement of service of a written request for disclosure.

In any event, in this case DAC waived any such argument when it completely and thoroughly responded to the Herald's request. That response did not raise any objection to service. Neither did the response object that DAC was an improper party to produce the requested records. Instead, DAC produced the records it felt were public records, and, in full compliance with section 119.07(2)(c), explained why it wasn't remitting certain documents. Having responded to the request, DAC cannot now argue that the request was not properly served.