Dear Mr. Hearn:
As Village Attorney for the Village of Biscayne Park, you have asked for my opinion on substantially the following questions:
1. Is the Biscayne Park Foundation, Inc., a not-for-profit foundation created by the Village of Biscayne Park, subject to Florida's Public Records Law, Chapter 119, Florida Statutes?
2. Is the Biscayne Park Foundation, Inc., a not-for-profit foundation created by the Village of Biscayne Park, subject to Florida's Government in the Sunshine Law, section 286.011, Florida Statutes?
In sum:
1. The Biscayne Park Foundation, Inc., is an "agency" for purposes of Chapter 119, Florida Statutes, and subject to the inspection and copying requirements thereof.
2. The Biscayne Park Foundation, Inc., is subject to and must comply with the requirements of section 286.011, Florida Statutes.
The Biscayne Park Foundation, Inc. ("the foundation"), is a 501(c)(3) charitable foundation and a not-for-profit organization that is described on the village's website and in village publications as "the Village's fundraising arm."[1] The foundation is intended to enhance the village's opportunities to raise monies through special events, sponsorships, donations, and grants for the Village of Biscayne Park.
As provided in its Articles of Incorporation, the foundation is "organized exclusively for charitable and educational purposes." The articles describe the purposes for which the corporation was formed:
"1. To raise the educational and social levels of the residents of the Village of Biscayne Park, Florida, to foster and promote community wide interest and concern for the history and preservation of the Village of Biscayne Park.
2. To aid, support, and assist by gifts, contributions, or otherwise, other corporations, community chests, funds and foundations organized and operated exclusively for charitable, educational or scientific purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation.
3. To do any and all lawful activities which may be necessary, useful, or desirable for the furtherance, accomplishment, fostering, or attaining of the foregoing purposes, either directly or indirectly, and either alone or in conjunction or cooperation with others, whether such others be persons or organizations of any kind or nature, such as corporations, firms, association, trusts, institution, foundations, or governmental bureaus, departments or agencies.
4. All of the foregoing purposes shall be exercised exclusively [sic] charitable and educational purposes in such a manner that the Corporation will qualify as an exempt organization under section 501(c)(3) of the Internal Revenue Code of 1986 or the corresponding provision of any future United States Internal Revenue law."[2]
According to information you have supplied, the foundation was created by the village, the village manager was the foundation's incorporator, and the principal office of the foundation is located at the village's administrative offices. The sole member of the foundation is the village commission.[3] The village commission nominates and appoints the foundation's board of directors and has the power to remove any member of the board.[4] In addition, vacancies occurring on the board during any term will be filled by the village commission.[5] However, once the board is appointed, the foundation's board exercises full control over the operations of the foundation.[6] The board appoints its own officers and ancillary boards and exercises removal power over those officers.[7] You state that the foundation receives no public funding.
Question One — Public Records Law
Chapter 119, Florida Statutes, the Public Records Law, provides the public access to certain governmental documents.[8] The law is to be construed liberally in favor of openness.[9] When there is any doubt, Florida's courts find in favor of disclosure.[10] The Public Records Law applies to all agencies, including any "business entity acting on behalf of any public agency."[11] The only agency records that are exempt from inspection and copying under the act are those that are provided confidentiality by statute or those that are expressly exempted by a statute or general or special law.[12]
Resolution of the question of whether a private entity is required to disclose records under the Public Records Law depends on consideration of a number of factors delineated by the Florida Supreme Court in News andSun-Sentinel Company v. Schwab, Twitty Hanser Architectural Group,Inc.[13] Moreover, notwithstanding consideration of these individual factors, it is the totality of factors that controls the determination.[14] A review of the factors described in the Schwab case and application of the facts relating to creation and operation of the Biscayne Park Foundation, Inc., support the conclusion that the foundation is an "agency," such that it must comply with Florida's Public Records Law.
In News and Sun-Sentinel Company v. Schwab, Twitty HanserArchitectural Group, Inc., [15] the Florida Supreme Court adopted a totality of factors test, which had been utilized by several district courts in determining whether a private entity was subject to Chapter 119, Florida Statutes. The test developed by the Schwab Court involved identifying links between the governmental agency and the private entity which should be considered in making the determination; however, no single factor is controlling on the question of whether an entity is subject to the Public Records Law. Rather, all of these factors must be reviewed and weighed in order to determine whether a private organization is an agency for purposes of Chapter 119, Florida Statutes:
"1. Creation — did the public agency play a part in the creation of the private entity"?
The Biscayne Park Foundation, Inc., was created by the Village of Biscayne Park to act on behalf of the village in financing and administering certain charitable, educational and scientific programs.
"2. Funding — has the public agency provided substantial funds, capital or credit to the private entity or is it merely providing funds in consideration for goods or services rendered by the public entity?"
You have advised that the foundation receives no funding from the village. Operation of the foundation appears to be conducted using funds generated through the foundations fund-raising activities and through the receipt of grants and gifts to the corporation.
"3. Commingling of Funds — whether there is a commingling of funds."
The only funds available to the Biscayne Park Foundation, Inc., are those received by the foundation from its own fundraising activities or through grants and donations.
"4. Public Property — whether the activity is conducted on publicly-owned property."
While you have advised that the foundation "plans not to use Village facilities, equipment, materials or supplies," it appears that the village manager (so identified in the articles of incorporation for the foundation) is the incorporator and registered agent for the foundation; the principal office of the corporation is located at the administrative offices of the village and the foundation's mailing address is the village hall. Further, the email address for the foundation is that of the village clerk of Biscayne Park.
"5. Decision-making process — does the private entity play an integral part in the public agency's decision-making process?"
The foundation plays no apparent role in the village's decision-making process.
"6. Governmental Function — `whether the private entity is performing a governmental function or a function which the public agency otherwise would perform.'"[16]
The foundation acts as the village's "fundraising arm" in financing and administering certain charitable, educational, and scientific programs of the municipality — a municipal function.
"7. Regulation — does the public agency regulate or otherwise control the private entity's professional activity or judgment?"
The village is the sole member of the foundation and retains considerable control, including the right to remove board members and fill vacancies on the board. Changes to the foundation's articles or bylaws must be approved by the village.
"8. Financial Interest — whether the governmental agency has a substantial financial interest in the private entity."
The village has no financial interest in the foundation as an investor, but has a substantial interest in the foundation and its activities in accomplishing the purposes of the foundation.
"9. Goals — is the goal of the private entity to help the public agency and the citizens served by the agency?"
The expressed goal of the foundation is the enhancement of opportunities for village residents through fundraising on the village's behalf.
A review of the Schwab factors as applied to the Biscayne Park Foundation, Inc., would put the foundation squarely in line with a number of Florida cases and Florida Attorney General Opinions[17] concluding that nonprofit entities such as the foundation are subject to the inspection and copying requirements of the Public Records Law.
Among the district court decisions relied on by the Schwab Court was that of the Second District Court of Appeal in Sarasota Herald Tribune Companyv. Community Health Corporation, Inc., [18] in which the court held that a nonprofit corporation created and funded by the public hospital district to operate as a side by side corporation to enhance the services provided by the public hospital was subject to the provisions of Chapter119, Florida Statutes. However, both Schwab and the SarasotaHerald-Tribune cases considered private business concerns with a governmental agency as one of their clients.
Your factual situation is more analagous to those court cases that have considered the agency status of private entities providing services that would otherwise be provided by the government such as MemorialHospital-West Volusia, Inc. v. News — Journal Corporation, [19] PutnamCounty Humane Society, Inc. v. Woodward, [20] Prison Health Services,Inc. v. Lakeland Ledger Publishing Company, [21] and Stanfield v.Salvation Army.[22] These cases were not business entities with a broad client base that were performing an isolated contract for a government client. These cases illustrate the principle that when a private entity undertakes to provide a service otherwise provided by the government, the entity is bound by the Public Records Law to the same extent that the government would be.[23]
Finally, the fact that a private entity is incorporated as a nonprofit corporation is not dispositive on the issue of its status under Chapter119, Florida Statutes. The relevant question is whether the entity is "acting on behalf of" an agency. In the instant inquiry, the Biscayne Park Foundation, Inc., was created by the Village of Biscayne Park to act as an instrumentality on behalf of the village in financing and administering certain charitable, educational, and scientific programs. The village is the sole member of the foundation and retains considerable control, including the right to remove board members and fill vacancies on the board. The goals of the foundation are directed toward enhancing the quality of life in the community through fundraising on behalf of the Village of Biscayne Park which appears to constitute a municipal governmental purpose.
In light of the above and applying the "totality of factors" analysis developed by the Florida Supreme Court, I am of the opinion that the Biscayne Park Foundation, Inc., is an "agency" for purposes of Chapter 119, Florida Statutes, and subject to the inspection and copying requirements thereof.
Question Two — Government in the Sunshine Law
Section 286.011, Florida Statutes, the Government in the Sunshine Law, provides in pertinent part:
"All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times. . . ."
In determining which entities may be covered by the Sunshine Law, the courts have stated that it was the Legislature's intent to extend application of the law so as to bind "every `board or commission' of the state, or of any county or political subdivision over which it has dominion and control."[24] In addition, when interpreting the Sunshine Law, the law should be liberally construed to give effect to its public purpose.[25]
Although private organizations are generally not subject to the Sunshine Law, open meetings requirements can apply if a public entity has delegated "the performance of its public purpose" to a private entity.[26] The Supreme Court of Florida recognized, in Memorial Hospital-WestVolusia, Inc. v. News-Journal Corporation, [27] the "natural tension between the privatization of traditionally public services and this State's constitutional commitment to public access to records and meetings concerning public business"[28] and found, in that case, that the delegation of the performance of its public purpose by a public hospital to a private entity would result in the private actor being subject to section 286.011, Florida Statutes, and Article I, section24(b), Florida Constitution.[29]
In a factual situation similar to the one you have presented, this office considered whether the Pace Property Finance Authority, Inc., which was created by a county and in which the county prescribed the duties of the authority and appointed its initial board of directors, was subject to the Government in the Sunshine Law. In Attorney General Opinion 94-34, the county retained control of the structure and organization of the authority, including, among other things, the power to remove and replace directors, amend the articles of incorporation, and approve any changes in the by-laws. The opinion noted that the authority and its board of directors were clearly subject to the dominion and control of the county and concluded that "as an authority created by the county and subject to its control, the Pace Property Finance Authority, Inc., and its board of directors are subject to the Government in the Sunshine Law."
Like the Pace Property Finance Authority, Inc., the Biscayne Park Foundation, Inc., was created as a nonprofit corporation to act as an instrumentality on behalf of the Village of Biscayne Park and for its benefit in financing and administering certain charitable, educational, and scientific projects. The village commission created the authority, approved its articles of incorporation, and must approve any changes to the articles or the bylaws. The village appointed the members of the board of directors of the authority and continues to control removal and replacement of the board members. There is only one member of the corporation and it is the village itself. The combination of these factors leads me to conclude that the foundation is subject to the Government in the Sunshine Law.[30]
Accordingly, I am of the opinion that the Biscayne Park Foundation, Inc., is subject to and must comply with the requirements of section286.011, Florida Statutes.
Sincerely,
Pam Bondi Attorney General
PB/tgh
[1] See http://www.biscayneparkfl.gov/index.asp, Biscayne Park Foundation, and Village of Biscayne Park, Biscayne Park Foundation Board Member Application.
[2] "Corporate Purposes," Articles of Incorporation of Biscayne Park Foundation, Inc., executed April 10, 2007.
[3] See Bylaw I: Membership, Amended Bylaws of Biscayne Park Foundation, Inc., adopted September 14, 2010.
[4] Id. ss. 1, 3, and 5, Bylaw II: Board of Directors.
[5] See s. 4, Bylaw II, supra n. 3.
[6] Bylaw II: Board of Directors, supra n. 3.
[7] Bylaw III: Officers, supra n. 3.
[8] Sections 119.01 and 119.07, Fla. Stat.
[9] Woolling v. Lamar, 764 So. 2d 765 (Fla. 5th DCA 2000), reviewdenied, 786 So. 2d 1186 (Fla. 2001); Dade Aviation Consultants, v. KnightRidder, Inc., 800 So. 2d 302 (Fla. 3d DCA 2001).
[10] City of St. Petersburg v. Romine, 719 So. 2d 19 (Fla. 2d DCA 1998).
[11] Section 119.011(2), Fla. Stat.
[12] Section 119.071, Fla. Stat.; Wait v. Florida Power Light Co.,372 So. 2d 420 (Fla. 1979); Miami Herald Publishing Co. v. City of NorthMiami, 452 So. 2d 572 (Fla. 3d DCA 1984).
[13] 596 So. 2d 1029 (Fla. 1992).
[14] Memorial Hospital-West Volusia, Inc. v. News-Journal Corp.,729 So. 2d 373, 379 (Fla. 1999) (citing Schwab, id. at 1031-32).
[15] 596 So. 2d 1029 (Fla. 1992).
[16] Schwab, id. at 1031.
[17] See, e.g., Op. Att'y Gen. Fla. 94-34 (1994) (Pace Property Finance Authority, Inc., created as a Florida nonprofit corporation by Santa Rosa County as an instrumentality of the county to provide assistance in funding and administration of certain governmental programs subject to Ch. 119, Fla. Stat.); Inf. Op. to Ellis, dated March 4, 1994 (rural health networks, established as nonprofit legal entities organized to plan and deliver health care services on a cooperative basis pursuant to s. 381.0406, Fla. Stat., subject to Ch. 119, Fla. Stat.); Op. Att'y Gen. Fla. 95-17 (1995) (South Florida Fair and Palm Beach County Expositions, Inc., created pursuant to Ch. 616, Fla. Stat., subject to Ch. 119, Fla. Stat.).
[18] 582 So. 2d 730 (Fla. 2d DCA 1991).
[19] 729 So. 2d 373 (Fla. 1999).
[20] 740 So. 2d 1238 (Fla. 5th DCA 1999),
[21] 718 So. 2d 204 (Fla. 2d DCA 1998),
[22] 695 So. 2d 501 (Fla. 5th DCA 1997).
[23] See Dade Aviation Consultants v. Knight Ridder, Inc., 800 So. 2d 302
(Fla. 3d DCA 2001).
[24] See, e.g., Times Publishing Company v. Williams, 222 So. 2d 470, 473
(Fla. 2d DCA 1969); City of Miami Beach v. Berns, 245 So. 2d 38 (Fla. 1971).
[25] See Board of Public Instruction Of Broward County v. Doran,224 So. 2d 693 (Fla. 1969); Wood v. Marston, 442 So. 2d 934 (Fla. 1983) (statute should be broadly construed to effect its remedial and protective purposes). Cf. Cape Coral Medical Center, Inc. v. News-PressPublishing Company, Inc., 390 So. 2d 1216, 1218, n. 5 (Fla. 2d DCA 1980) (inasmuch as the policies behind Ch. 119, Fla. Stat., and s. 286.011, Fla. Stat., are similar, they should be read together); Wood v. Marston,442 So. 2d 934, 938 (Fla. 1983); Krause v. Reno, 366 So. 2d 1244, 1252
(Fla. 3d DCA 1979), for the proposition that when attempting to apply the open government laws to private organizations, the courts look to Ch. 119 to determine the applicability of the Sunshine Law.
[26] Memorial Hospital-West Volusia, Inc. v. News-Journal Corporation,729 So. 2d 373 (Fla. 1999). And see Mae Volen Senior Center, Inc. v. AreaAgency on Aging, 978 So. 2d 191 (Fla. 4th DCA 2008), review denied,1 So. 3d 172 (Fla. 2009) (area agencies on aging which are public or private nonprofit organizations designated by the Department of Elder Affairs to coordinate and administer department programs and to provide, through contracting agencies, services for the elderly within a planning and service area are subject to Ch. 119 and s. 286.011, Fla. Stat., when considering any contracts requiring the expenditure of public funds).
[27] 729 So. 2d 373 (Fla. 1999).
[28] Id. at 376.
[29] Supra n. 27 at 383.
[30] And see Op. Att'y Gen. Fla. 04-44 (2004) (Sunshine Law applies to Prison Rehabilitative Industries and Diversified Enterprises [PRIDE], the nonprofit corporation established by state law to manage correctional work programs of the Department of Corrections. Cf. Inf. Op. to Martelli, dated July 20, 2009 (State Fair Authority created by statute as a public corporation, is subject to s. 286.011, Fla. Stat.). See also
Ops. Att'y Gen. Fla. 98-55 (1998) (meetings of the board of directors of the Council on Aging of St. Lucie, Inc., a nonprofit organization incorporated pursuant to the "Community Care for the Elderly Act," must comply with the Sunshine Law); 98-42 (1998) (Florida High School Activities Association, Inc., having been legislatively designated as the governing organization of athletics in Florida public schools, is subject to the Sunshine Law); and 98-01 (1998) (Sunshine Law applies to board of trustees of insurance trust fund created pursuant to collective bargaining agreement between city and employee union).